■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY ROMEO, Appellant. [849 NYS2d 666]—

Appeal by the defendant from a judgment of the County Court, Suffolk County (Kahn, J.), rendered February 16, 2006, convicting him of manslaughter in the first degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the County Court, Suffolk County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

In November 1985 the defendant killed John Starkey in Suffolk County (hereinafter the Starkey homicide). During the course of the People's investigation of this homicide, the County Court issued an order that the defendant provide blood and hair samples. The defendant's attorney arranged that the defendant would surrender on March 5, 1987. Instead of surrendering, the defendant fled to Canada, where, on March 8, 1987, he killed a New Brunswick constable. The defendant recrossed the border into the United States and was arrested in Boston for that crime. On March 9, 1987, he appeared before a federal magistrate, who ordered that he be held without bail pending extradition to Canada. Suffolk County law enforcement officials, who were made aware of the defendant's presence in the United States, obtained blood and hair samples from him while he was incarcerated in Boston. Within a week, testing of those samples linked the defendant to the Starkey homicide. In that same month, March 1987, a grand jury in Suffolk County returned an indictment charging the defendant with two counts of murder in the second degree in connection with the Starkey homicide, and an arrest warrant and a detainer were issued.

In March and April 1987, while the defendant remained in federal custody, hearings were held on the Canadian extradition request, and the People agreed to permit the Canadian case to be tried first. The defendant, through counsel, objected, and asserted the defendant's constitutional right to a speedy trial. In May 1987, the defendant, who was then in federal custody in Springfield, Missouri, moved for an order directing the People to obtain the defendant's presence in Suffolk County for arraignment. At the oral argument on the motion, the People, in opposing the motion, argued in part that they believed the Canadian trial would not affect or delay the timing of the ultimate trial date under the Suffolk County indictment for the Starkey homicide.

By order dated June 17, 1987, more than three months after the defendant had been taken into federal custody, the County Court denied his motion. The court noted that the People's decision to defer its prosecution of the Starkey homicide might implicate the defendant's speedy trial rights: "[i]n the event that this procedure results in the violation of the defendant's right to a speedy trial he may seek the ultimate remedy of dismissal at the appropriate time and in the appropriate manner." At oral argument on the motion on June 15, 1987 the County Court had characterized the People's strategy as "one that they will have to live with." The defendant was extradited to Canada in 1987, convicted of the constable's murder, and sentenced to an indeterminate term of 25 years' to life imprisonment. The People did not seek to extradite the defendant from Canada after his conviction and sentencing in 1987.

In July 1999, while incarcerated in Canada, the defendant moved in the County Court, Suffolk County, to dismiss the Starkey indictment on constitutional and statutory (see CPL 30.20) speedy trial grounds. The People argued in opposition, as they do now, that under the extradition treaty between the United States and Canada (see Treaty on Extradition Between the United States of America & Canada, 27 UST 983, TIAS No. 8237 [1971]), it would have been futile to seek extradition because it would have required the Canadian authorities to commute the defendant's sentence on his conviction for the murder of the constable. The motion was denied in December 1999.

On April 30, 2003, an amendment to the extradition treaty became effective and, on June 3, 2003, the People sought extradition of the defendant. In November 2005, upon the defendant's return to the United States, he was finally arraigned on the Suffolk County indictment. In February 2006 the defendant pleaded guilty to manslaughter in the first degree pursuant to the Suffolk County indictment and was sentenced to an indeterminate term of 7 to 21 years' imprisonment with respect to the Starkey homicide, to run concurrently with the term imposed upon his Canadian conviction. During the 2005 and 2006 proceedings in the County Court, Suffolk County, the defendant did not renew or reassert his constitutional speedy trial claim. As part of his allocution to the guilty plea to manslaughter in the first degree, he expressly waived his right to appeal his "plea and sentence as well as any prior rulings that remain in the case."

After the defendant was sentenced in Suffolk County, he was returned to Canada to continue serving the sentence imposed in

connection with the constable's murder and the concurrent sentence on the Starkey homicide.

The defendant now appeals his conviction for the Starkey homicide, arguing that his constitutional right to a speedy trial has been violated.

The People's claim that the defendant's "failure to file a motion to dismiss the indictment in 2005 or 2006 constitutes nonpreservation" of his constitutional speedy trial claim is without merit. The defendant's claim is "not procedurally barred since constitutional speedy trial claims survive both a plea of guilty and an otherwise efficacious waiver of appellate review" (*People v Love,* 236 AD2d 488, 489 [1997]; *see People v Seaberg,* 74 NY2d 1, 9 [1989]). "[A] defendant who initially interposes a constitutional speedy trial claim but subsequently abandons it *before a determination on the claim is made,* cannot subsequently raise that claim on appeal" (*People v Sutton,* 80 NY2d 273, 282 [1992] [emphasis added]). Here, however, the defendant's 1999 constitutional speedy trial motion was, in fact, decided by the County Court in 1999. The defendant was, thus, not required to reassert this claim when he pleaded guilty in 2006 (*cf. People v Love,* 236 AD2d at 489). Nor could the defendant's waiver of the right to appeal encompass the claim (*see People v Sutton,* 80 NY2d at 281-282; *People v Allen,* 86 NY2d 599, 602 [1995]; *People v Seaberg,* 74 NY2d at 9).

On the merits, in evaluating a speedy trial claim under the United States Constitution, we must consider the extent of the delay, the reason for it, the nature of the underlying charge, whether there has been an extended period of pretrial incarceration, and whether there is any indication that the defense has been prejudiced by the delay (*see People v Taranovich,* 37 NY2d 442, 445 [1975]; *cf. People v Vernace,* 96 NY2d 886, 887 [2001]).

The defendant's constitutional speedy trial claim must be evaluated in light of the delay as of the time the defendant made his speedy trial motion in 1999 (*see People v Love,* 236 AD2d at 488-489). We agree with the defendant that he was denied his constitutional right to a speedy trial (*see* US Const, 6th, 14th Amends).

Here, the delay we consider is the 12 years from 1987 to 1999. That lengthy period is extraordinary (*see Doggett v United States,* 505 US 647, 657 [1992]; *Barker v Wingo,* 407 US 514, 533 [1972]). Indeed, the People do not dispute that the defendant need not demonstrate prejudice in light of this extensive period of delay, arguing only that they were prejudiced as well. Additionally, the reason for the delay was the People's decision to defer prosecution in favor of the Canadian prosecution, de-

spite the defendant's presence in this country. That the People may have mistakenly believed that they would be able to obtain the defendant's presence after the Canadian trial was completed is unavailing, especially in light of the facts that the extradition provisions in effect before the defendant was extradited to Canada were the same as those in effect during the entire 12-year period of delay, and the People did not request extradition (*see United States v Pomeroy,* 822 F2d 718, 721-722 [8th Cir 1987]; *United States v McConahy,* 505 F2d 770 [7th Cir 1974]; *People v McLaurin,* 38 NY2d 123, 126 [1975]; *People v Winfrey,* 20 NY2d 138, 141-142 [1967]). Two of the *Taranovich* factors (*see People v Taranovich,* 37 NY2d 442 [1975]) militate in favor of the People's position. The seriousness of the charges in connection with the Starkey homicide is self-evident, and the defendant was not incarcerated before trial on those charges at all. Nevertheless, under the circumstances of this case, we find that the length of the delay, the prejudice to the defendant, and the People's responsibility for the delay—despite having been aware before the defendant was extradited to Canada that he was asserting his constitutional right to a speedy trial—outweigh the other factors. The defendant was denied his constitutional right to a speedy trial. Crane, J.P., Rivera, Florio and Balkin, JJ., concur.